[Cite as *In re L.W.*, 2020-Ohio-5439.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| | : | Hon. Patricia A. Delaney, J. |
| IN RE L.W. | : | Hon. Craig R. Baldwin, J. |
| | : | |
| | : | Case No. 2020 CA 0026 |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | O P I N I O N |


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Richland County Court of Common Pleas, Juvenile Division, Case No. 2019 DEP 00086 |
| | |
| JUDGMENT: | AFFIRMED |
| | |
| DATE OF JUDGMENT ENTRY: | November 24, 2020 |


APPEARANCES:

| For Mother-Appellant: | For RCCS-Appellee: |
|---|---|
| DARIN AVERY | CHRISTOPHER ZUERCHER |
| 105 Sturges Ave. | GINA NENNIG |
| Mansfield, OH 44903 | 731 Scholl Rd. |
| | Mansfield, OH 44907 |

*Delaney, J.*

{¶1}   Mother-Appellant appeals the January 24, 2020 judgment entry of the Richland County Court of Common Pleas, Juvenile Division awarding legal custody of her children, C.W. and L.W. to Paternal Aunt.

**FACTS AND PROCEDURAL HISTORY**

{¶2}   Mother-Appellant is the mother of C.W., born on June 22, 2008, and L.W., born on September 13, 2012. C.W. and L.W. are the youngest of Mother's six children.

**Richland County**

{¶3}   Mother has an extensive history with the Richland County Children Services-Appellee ("RCCS"). Her first case was opened in 1994. Since 1994, RCCS has investigated Mother multiple times for allegations of neglect, physical abuse, substance abuse, and sexual abuse.

{¶4}   On June 11, 2013, C.W. and L.W. were placed in the emergency custody of RCCS. The Richland County Court of Common Pleas, Juvenile Division, adjudicated the children dependent on September 10, 2013. Mother was reunified with the children on November 20, 2013, under the protective supervision of RCCS.

{¶5}   Mother moved to Mahoning County with the children. On April 25, 2014, the Richland County Juvenile Court filed an entry transferring protective supervision of the children to Mahoning County.

**Mahoning County**

{¶6}   Mother, C.W., and L.W. lived with Father and the children's twin half-brothers in Mahoning County. On December 13, 2014, the four children were sleeping in their Youngstown apartment when armed intruders entered the home and shot Father

several times in the chest. Father later died at the hospital. The police believed it was a robbery. Mother admitted to using heroin that day and that she brought the assailants to the apartment. The police took custody of the children at the scene and they were placed in the temporary custody of Mahoning County Children Services ("MCCS"). The children were placed in foster care. In 2015, MCCS placed the children with Paternal Aunt, who resided in Richland County.

{¶7} On January 14, 2016, the Mahoning County Juvenile Court held a hearing on the motions from MCCS to Terminate Custody and Transfer Care and Custody. MCCS moved to dismiss its motions for Court Ordered Protective Supervision and Motion to Certify Jurisdiction amended to Motion to Transfer Jurisdiction. MCCS asked the court to terminate its custody of the children and transfer temporary custody to Paternal Aunt. Mother had not been in regular contact with MCCS or the children since 2015. Through coordination with the MCCS caseworker, RCCS investigated Paternal Aunt and offered her and the children support services.

{¶8} On February 17, 2016, the Mahoning County Juvenile Court found it was in the best interest of the children that they be placed in the temporary custody of Paternal Aunt, effective January 14, 2016. The judgment entry stated in pertinent part to this appeal:

7. Mother may return to Court at any time to file for modification of visitation and/or custody.

* * *

9. The Court retains continuing jurisdiction over the Minor Children pursuant to Ohio Revised Code § 2151.353(B)(1).

**Richland County**

{¶9}   Mother had been in and out of jail and prison since 1998. In 2015 and 2016, she was in prison for drug offenses committed in Ashland County. She was released from prison in January 2017 and arrested in May 2017 on robbery charges in Cuyahoga County. She plead guilty and was sentenced to three years in prison starting on September 1, 2017. Mother was due to be released in November 2019.

{¶10}  On April 11, 2019, RCCS filed a complaint in the Richland County Juvenile Court alleging C.W. and L.W. were dependent children due to the children's custodial history, Father's death, Mother's incarceration, and her history of substance abuse, physical abuse, criminal issues, and lack of parenting skills and/or other personal problems. RCCS requested a dispositional order of legal custody to Paternal Aunt.

{¶11} The initial hearing was held on May 13, 2019. Mother denied the allegations in the complaint.

{¶12} On June 14, 2019, RCCS moved the trial court for a temporary order of temporary custody of the children to Paternal Aunt. The order was granted on June 14, 2019.

{¶13} The adjudicatory hearing was held on June 12, 2019. The Magistrate's Decision was issued on June 26, 2019. At the hearing, Mother agreed the trial court should find the children to be dependent children based upon the facts that she was incarcerated and was therefore unavailable to provide care for the children and Father was deceased.

{¶14} On August 2, 2019, Mother filed pro se motions with the trial court providing documentation from the Mahoning County Juvenile Court suggesting that Mahoning County retained jurisdiction over the children.

{¶15} The appointed Guardian ad Litem filed her report on August 5, 2019. The GAL recommended it was in the best interest of the children to be placed in the legal custody of Paternal Aunt. The GAL refiled the report on November 8, 2019.

{¶16} On November 14, 2019, Mother filed a Motion to Dismiss the complaint for dependency. Mother alleged that (1) Richland County Juvenile Court did not have jurisdiction to hear the complaint because the Mahoning County Juvenile Court retained jurisdiction; (2) there could not be a second finding of dependency for a child already declared dependent by a different court; and (3) the trial court's June 26, 2019 finding of dependency was not supported by the facts.

{¶17} The trial to determine the initial disposition of the children came on before the magistrate on November 18, 2019. The Magistrate's Decision was filed on December 2, 2019, granting legal custody to Paternal Aunt. The magistrate first considered Mother's Motion to Dismiss. The magistrate found the motion to be untimely and that the court had jurisdiction and proper venue to consider the matter. Further, the Mahoning County Juvenile Court filed an Amended Magistrate's Decision on August 22, 2019 that added language relinquishing jurisdiction to any county where the child had resided for six months. The magistrate went on to consider the merits of the complaint. It found that Mother had been released from prison and had moved to transitional housing in Columbus, Ohio. Mother had no contact with the children since 2015, other than four letters. C.W. did not want contact with Mother and L.W. had no memory of Mother.

Paternal Aunt had been providing appropriate care for the children for four years. The children were bonded with Paternal Aunt. Based on those facts, the magistrate recommended that Paternal Aunt be granted legal custody of the children.

{¶18} On December 16, 2019, Mother filed objections to the Magistrate's Decision. She did not file a transcript with her objections because she argued her objections were based only on legal questions, not to the magistrate's findings of fact. In her objections, Mother again argued the Richland County Juvenile Court did not have jurisdiction to hear the complaint for dependency before August 22, 2019, when Mahoning County transferred the matter to Richland County. She further argued that neither Mahoning nor Richland County had jurisdiction to hear the complaint for dependency because a child could not be declared dependent twice.

{¶19} RCCS did not respond to Mother's objections.

{¶20} On January 24, 2020, the trial court overruled Mother's objections and adopted the Magistrate's Decision.

{¶21} It is from this judgment Mother now appeals.

## ASSIGNMENTS OF ERROR

{¶22} Mother raises two Assignments of Error:

{¶23} "I. THE COURT LACKED JURISDICTION TO ENTERTAIN A COMPLAINT ALLEGING DEPENDENCY OF THE CHILD.

{¶24} "II. THE COURT ERRED IN FINDING THAT THE ITEMS LISTED IN ITS DECISION ADJUDICATING THE CHILD DEPENDENT SUPPORTED A FINDING OF DEPENDENCY."

## ANALYSIS

### I. Jurisdiction

{¶25} Mother contends in her first Assignment of Error that the trial court erred when it failed to dismiss the complaint for dependency for lack of jurisdiction. We disagree.

{¶26} "Ohio's juvenile courts are statutory courts, created by the General Assembly." *In re Z.R.*, 144 Ohio St.3d 380, 2015-Ohio-3306, 44 N.E.3d 239, ¶ 14 citing R.C. Chapter 2151; *State v. Wilson*, 73 Ohio St.3d 40, 43, 652 N.E.2d 196 (1995). The juvenile court has limited jurisdiction because it is a statutory court and therefore, it can exercise only the authority conferred upon it by the General Assembly. *Id.* citing *State ex rel. Ramey v. Davis*, 119 Ohio St. 596, 165 N.E. 298 (1929), paragraph four of the syllabus.

{¶27} Ohio's Juvenile Rules were fashioned to ensure a uniform procedure for Ohio's juvenile courts. *In re Z.R., supra* at ¶ 15 citing *Linger v. Weiss*, 57 Ohio St.2d 97, 100, 386 N.E.2d 1354 (1979). "It is well understood that the substantive and procedural rules that are applicable in the unique context of juvenile court proceedings are quite different from those applicable during criminal or civil proceedings in courts of general jurisdiction." *Id.* at ¶ 15 citing *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 65–67; *In re T.R.*, 52 Ohio St.3d 6, 15, 556 N.E.2d 439 (1990).

### Continuing Jurisdiction

{¶28} The Ohio Supreme Court held it was "undisputed that all Ohio juvenile courts have subject matter jurisdiction over dependency cases." *In re Z.R.*, 2015-Ohio-3306, ¶ 16. R.C. 2151.23(A)(1) states that a juvenile court has "exclusive original

jurisdiction * * * concerning any child who on or about the date specified in the complaint * * * is alleged * * * to be a * * * dependent child." R.C. 2151.23(A)(1). Mother contends in her appeal that R.C. 2151.23 confers exclusive jurisdiction to the Mahoning County Juvenile Court on any custody matters relating to C.W. and L.W. The Richland County Juvenile Court thereby did not have the jurisdiction to hear the complaint for dependency and should have granted the motion to dismiss the complaint for dependency.

{¶29} In support of her argument for the exclusive continuing jurisdiction of Mahoning County, Mother next points this Court to the provisions of R.C. 2151.353. R.C. 2151.353 controls the disposition of an abused, neglected, or dependent child. It first lists six alternative orders of disposition that a court may enter on behalf of a child adjudicated abused, neglected, or dependent:

> (A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
>
> (1) Place the child in protective supervision;
>
> (2) Commit the child to the temporary custody of any of the following:
>
> * * *
>
> (d) A relative residing within or outside the state;
>
> * * *
>
> (3) Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings.

* * *

(4) Commit the child to the permanent custody of a public children services

agency or private child placing agency, * * *.

(5) Place the child in a planned permanent living arrangement with a public

children services agency or private child placing agency, * * *.

(6) Order the removal from the child's home until further order of the court

of the person who committed abuse as described in section 2151.031 of the

Revised Code against the child, who caused or allowed the child to suffer

neglect as described in section 2151.03 of the Revised Code, or who is the

parent, guardian, or custodian of a child who is adjudicated a dependent

child and order any person not to have contact with the child or the child's

siblings.

{¶30} Mother then cites R.C. 2151.353(F)(1), which states the court retains jurisdiction over any child for whom the court issues an order of disposition, such as temporary custody as in the present case:

(F)(1) The court shall retain jurisdiction over any child for whom the court

issues an order of disposition pursuant to division (A) of this section or

pursuant to section 2151.414 or 2151.415 of the Revised Code until the

child attains the age of eighteen years if the child does not have a

developmental disability or physical impairment, the child attains the age of

twenty-one years if the child has a developmental disability or physical

impairment, or the child is adopted and a final decree of adoption is issued,

except that the court may retain jurisdiction over the child and continue any

order of disposition under division (A) of this section or under section 2151.414 or 2151.415 of the Revised Code for a specified period of time to enable the child to graduate from high school or vocational school. The court shall make an entry continuing its jurisdiction under this division in the journal.

**Directory vs. Mandatory**

{¶31} The Ohio Supreme Court examined a juvenile court's statutory jurisdiction to adjudicate a child as dependent based on the residency of a child in *In re Z.R.*, 144 Ohio St.3d 380, 2015-Ohio-3306, 44 N.E.3d 239. The Court found in that case the question of whether to dismiss the complaint for dependency was related to venue, a procedural matter concerning the geographic location where a given case should be heard. *Id.* at ¶ 16. While the parties have not raised venue as an issue in this case, the Court's analysis of the juvenile court's statutory jurisdiction is pertinent to this appeal.

{¶32} In *In re Z.R.*, the mother was the biological mother of six children. The five older children had been removed from the mother's custody and adjudicated neglected and dependent in Summit County. Summit County was aware the mother was due to give birth but she was evasive as to the location of her residence. The mother gave birth to the youngest child, Z.R., in Cuyahoga County and the hospital notified Summit County. Summit County filed a complaint in the Summit County Juvenile Court alleging Z.R. was dependent. The mother filed a motion to transfer Z.R.'s and Z.R.'s siblings' cases to Cuyahoga County. She also moved to dismiss the complaint regarding Z.R. for lack of jurisdiction. *Id.* at ¶¶ 2-6. She contended venue was improper because Z.R. had no contact in Summit County.

{¶33} The Summit County Juvenile Court found Z.R. to be a dependent child and transferred the case to the Cuyahoga County Juvenile Court. The mother appealed the trial court's failure to dismiss the dependency complaint. The Ninth District Court of Appeals reversed the judgment of the Summit County Juvenile Court to transfer the complaint, rather than grant the motion to dismiss. *Id.* at ¶ 9. It acknowledged that Summit County Juvenile Court had jurisdiction over the subject matter of the case, but it held improper venue defeated Summit County's ability to invoke the jurisdiction of the trial court. *Id.* at ¶ 11.

{¶34} The Ohio Supreme Court accepted the discretionary appeal of whether a juvenile court must dismiss a dependency complaint due to improper venue. The Court examined whether venue was a jurisdictional prerequisite. "[I]f a procedural provision is more reasonably construed as directory rather than mandatory, a failure to comply with the provision will not preclude a court's jurisdiction over the case." *Id.* at ¶ 17 citing *In re Davis*, 84 Ohio St.3d 520, 523, 705 N.E.2d 1219 (1999). It first examined R.C. 2151.27(A)(1).

{¶35} R.C. 2151.27(A)(1) outlines the requirements that must be met to invoke the jurisdiction of a juvenile court:

[A]ny person having knowledge of a child who appears * * * to be an unruly, abused, neglected, or dependent child may file a sworn complaint with respect to that child in the juvenile court of the county in which the child has a residence or legal settlement or in which the violation, unruliness, abuse, neglect, or dependency allegedly occurred. * * * The sworn complaint may be upon information and belief, and, in addition to the allegation that the

child * * * is an unruly, abused, neglected, or dependent child, the complaint

shall allege the particular facts upon which the allegation that the child * * *

is an unruly, abused, neglected, or dependent child is based.

{¶36} Juv.R. 10(A) similarly reads:

Any person having knowledge of a child who appears to be a * * * neglected,

dependent, or abused may file a complaint with respect to the child in the

juvenile court of the county in which the child has a residence or legal

settlement, or in which * * * neglect, dependency, or abuse occurred.

* * *

Any person with standing may file a complaint for the determination of any

other matter over which the juvenile court is given jurisdiction by the

Revised Code. The complaint shall be filed in the county in which the child

who is the subject of the complaint is found or was last known to be. In a

removal action, the complaint shall be filed in the county where the foster

home is located.

{¶37} The Court next examined the statutory scheme governing juvenile courts. The central purpose of the juvenile court system is "[t]o provide for the care, protection, and mental and physical development of children." *In re Z.R., supra* at ¶ 20 citing R.C. 2151.01(A). The General Assembly had also made clear that the laws governing the administration of the juvenile courts must be "liberally interpreted and construed" to effectuate the above purposes. *Id.*; R.C. 2151.01. The Ohio Supreme Court stated:

In application, the goals of protecting and caring for children, in conjunction

with the requirement of statutory flexibility in promoting those goals, result

in proceedings that are less formal and less adversarial than in courts of general jurisdiction. *See In re T.R.* at 15, 556 N.E.2d 439. Not surprisingly then, juvenile courts must prioritize substance over form.

*In re Z.R., supra* at ¶ 21.

{¶38} The Court looked at the discretionary language in R.C. 2151.27(A)(1). "R.C. 2151.27(A)(1) provides that any person *may* file a complaint alleging that a child is dependent 'in the juvenile court of the county in which the child has a residence or legal settlement *or* in which the * * * dependency allegedly occurred." (Emphasis sic.) *Id.* at ¶ 22. The Court noted there was no language in R.C. 2151.27(A)(1) and Juv.R. 10(A) that contained any language suggesting a court must dismiss a dependency complaint filed in a county that did not meet either of those two criteria. *Id.*

{¶39} The trial court finally examined Juv.R. 11, which governs the transfer of cases to another county. Juv.R. 11(A) states if a juvenile court proceeding was commenced outside of a child's county of residence, the juvenile court *may* transfer the proceeding to the child's county of residence "upon the filing of the complaint or after the adjudicatory or dispositional hearing for such further proceeding as required." (Emphasis added.) Juv.R. 11(B) states, when a juvenile court proceeding is commenced in a county outside the child's county of residence and other proceedings involving the child are pending in the juvenile court of the child's residence, the juvenile court *must* transfer the proceedings. (Emphasis added.) The Court noted that dismissal was not provided as an option under Juv.R. 11. *Id.* at ¶ 25. "Instead, the decision to transfer venue is generally within the juvenile court's broad discretion." *Id.*

{¶40} The Court, in considering the context of Chapter 2151 as a whole, as well as the purposes behind the creation of the juvenile court system, concluded that the venue directives contained in R.C. 2151.27(A)(1) were not jurisdictional requirements and were within a juvenile court's sound discretion to remedy an alleged venue defect by transferring the case to a proper venue. *Id.* at ¶ 29. The venue provisions were directory rather than mandatory, a determination that was consistent with "the general practice of ensuring wide discretion for juvenile courts." *Id.* at ¶¶ 26-27. The Court found no error for the Summit County Juvenile Court to deny the mother's motion to dismiss the dependency complaint for lack of jurisdiction, find Z.R. to be a dependent child, and then transfer the matter to the Cuyahoga County Juvenile Court. *Id.* at ¶ 30.

{¶41} We find the Supreme Court's analysis of the Chapter 2151 venue directives to be persuasive when we consider Mother's argument that the Richland County Juvenile Court did not have jurisdiction to consider the complaint for dependency filed in Richland County Juvenile Court.

{¶42} R.C. 2151.353(F)(1)(A) states the juvenile court "shall retain jurisdiction over any child for whom the court issues an order of disposition" of temporary custody. The Mahoning County Juvenile Court adjudicated C.W. and L.W. dependent and filed an order of disposition on February 17, 2016, awarding temporary custody of the children to Paternal Aunt. R.C. 2151.27(A)(1) and Juv.R. 10 provides, however, that any person may file a complaint alleging that a child is dependent "in the juvenile court of the county in which the child has a residence or legal settlement *or* in which the * * * dependency occurred." (Emphasis added.) As stated by *In re Z.R.*, "R.C. 2151.27 and Juv.R. 10(A) do not contain any language suggesting that a court *must* dismiss a dependency complaint

filed in a county that does not meet either of these two criteria." (Emphasis sic.) 2015-Ohio-3306 at ¶ 22. On April 11, 2019, when RCCS filed the complaint for dependency in the Richland County Juvenile Court, C.W. and L.W. were residing in Richland County. Under R.C. 2151.27(A)(1) and Juv.R. 10, Richland County was the appropriate county under which to file a dependency complaint.

{¶43} Pursuant to *In re Z.R.*, the Richland County Juvenile Court was not required to dismiss the dependency complaint. On August 22, 2019, the Mahoning County Juvenile Court amended its dispositional order to add language relinquishing jurisdiction to any county where the child had resided for six months, essentially granting a blanket transfer pursuant to Juv.R. 11. Considering the purpose of Chapter 2151 in granting juvenile courts wide discretion to protect children, we find no error for the Richland County Juvenile Court to deny the motion to dismiss and proceed with the dependency complaint.

{¶44} This decision is bolstered by R.C. 2151.353(G), the so-called "sunset" provision related to temporary orders. The statute states that any temporary custody order shall terminate one year after the earlier of the date on which the complaint in the case was filed. The passing of the sunset date does not divest the trial court from making appropriate dispositional orders. *In re D.H.*, 4th Dist. Gallia No. 09CA11, 2009-Ohio-6009, ¶ 34 citing *Holloway v. Clermont Cty. Dept. of Human Servs.*, 80 Ohio St.3d 128, 130, 1997-Ohio-131, 684 N.E.2d 1217. In this case, however, the Mahoning County Juvenile Court made no further dispositional orders after February 17, 2016.

{¶45} When RCCS filed the complaint for dependency, the temporary custody order issued by Mahoning County had terminated as a matter of law, the children continued to reside with Paternal Aunt, and Mother was in prison. The Richland County

Juvenile Court remarked on the unclear custody status of the children in its January 24, 2020 judgment entry, "* * * the [February 17, 2016] entry was the last action taken by that Court for over three years, leaving the child in the legal limbo of an outdated and dubious temporary custody order to a relative." We agree. Considering the purpose of Chapter 2151 to protect children and provide them with a legally secure placement which was effectuated by granting juvenile courts wide discretion, there was no error by the Richland County Juvenile Court to consider the dependency complaint filed in Richland County.

{¶46} Mother's first Assignment of Error is overruled.

## II. Dependency Finding

{¶47} In Mother's second Assignment of Error, she contends the trial court erred when it adjudicated C.W. and L.W. dependent. We disagree.

{¶48} R.C. 2151.28(L) states:

If the court, at an adjudicatory hearing held pursuant to division (A) of this section upon a complaint alleging that a child is an abused, neglected, dependent, delinquent, or unruly child or a juvenile traffic offender, determines that the child is a dependent child, the court shall incorporate that determination into written findings of fact and conclusions of law and enter those findings of fact and conclusions of law in the record of the case. The court shall include in those findings of fact and conclusions of law specific findings as to the existence of any danger to the child and any underlying family problems that are the basis for the court's determination that the child is a dependent child.

{¶49} Mother argues the Magistrate's Decision did not contain specific findings of fact as to the existence of any danger to the child and any underlying family problems. At the time the dependency complaint was filed, the children were residing with Paternal Aunt, who was providing the appropriate care to the children.

{¶50} We find the record supports the trial court's finding that due to the factual and procedural history of this case, there were underlying family problems and the children were in danger. Mother had been the subject of numerous investigations by RCCS for substance abuse, physical abuse, criminal issues, and lack of parenting skills and/or other personal problems. Father was shot to death by intruders in the home while the children were sleeping. After Father's death, the children were placed in the temporary custody of Paternal Aunt. When RCCS filed its dependency complaint, the temporary custody dispositional order of the Mahoning County Juvenile Court had terminated by operation of law. Mother was incarcerated and had no contact with the children since 2015. The children were in a custodial limbo without legally secure placement. Further, Mother stipulated to a dependency finding.

{¶51} Mother's second Assignment of Error is overruled.

## CONCLUSION

{¶52} The judgment of the Richland County Court of Common Pleas, Juvenile Division, is affirmed.

By: Delaney, J.,

Hoffman, P.J. and

Baldwin, J., concur.